154 So. 101

## GAINES v. DAHLIN et al.
### 3 Div. 84.

Supreme Court of Alabama.
April 12, 1934.

Wm. F. Thetford, of Montgomery, for appellant.

Wm. J. Fuller, of Montgomery, for cross-appellant.

Steiner, Crum & Weil, of Montgomery, for appellee.

KNIGHT, Justice.

Bill by Estelle Gaines, a minor, by her next friend, against Estelle Dahlin, A. Guy Gaines, and the First National Bank of Montgomery, seeking to have a certain agreement executed by and between the respondents to the bill declared to be null and void, and also to require the said bank to account to the said Estelle Dahlin, as trustee under the will of William L. Gaines, deceased, for the proceeds derived by the bank from the collection of a certain mortgage, and to deliver the fund to said Estelle Dahlin as such trustee.

The cause is in this court on appeal from an interlocutory decree of the circuit court, sustaining the demurrers filed by the First National Bank to the original bill of complaint, and to the cross-bill filed by Estelle Dahlin.

It is made to appear, from the averments of the bill, that William L. Gaines departed this life on or about November 19, 1926, leaving a last will and testament. After devising one-half of his estate (after the payment of certain bequests) to his daughter, Estelle Peters, now Estelle Dahlin, the testator gave and devised to his said daughter (after the payment of his debts and certain bequests) all the balance and residue of his estate in trust for his son, A. Guy Gaines, with a further provision, annexed thereto, providing for the education of his granddaughter, then a child of about three years of age, and who is the complainant in the original bill. The provisions of said will, presently pertinent, are contained in section 7 thereof, and we here reproduce the same:

"I give and devise and bequeath to my daughter, Estelle Peters as trustee for my son A. Guy Gaines, after the payment and settlement of the above bequests all of the rest and residue of my property, of every kind, nature and description of which I may die seized and possessed of, or to which I may be entitled at the time of my decease. The said trustee shall manage and control all of said property, and shall be authorized and

empowered to make deeds, transfers and to do any and all acts necessary in the transaction and management of said trust estate, and she may invest the same in a safe and conservative manner, as she may see fit, and she may pay over to the said A. Guy Gaines the interest or proceeds, or any part of the principal of said trust estate bequeathed to her as such trustee but she shall reserve a sufficient amount out of said trust fund, as in her judgment will be proper to educate Estelle Gaines, the daughter of A. Guy Gaines, and she shall have authority to expend such an amount as she may deem fit, and use to educate the said Estelle Gaines with, and the said amount expendid [expended] shall be a proper charge against said trust fund. She is authorized to make payment to the said A. Guy Gaines of such amounts out of said trust fund, as she sees fit, and is requested to use her best judgment in making such payments to him.

"My said trustee shall have full power and authority to execute all mortgages, deeds, receipts, releases, acquitances or any other instrument necessary or incident to the performance of the trust herein imposed, and the management of said trust estate shall be according to her wishes, and none of said trust property shall be subject to or liable in any way or responsible for the payment of any debts or obligation contracted by the said A. Guy Gaines, and shall be managed without any right or authority from the said A. Guy Gaines to dictate or interfere in the investment of said estate."

The bill avers that after the said Estelle Dahlin had taken upon herself the execution of the trust created by the will, she, along with the said A. Guy Gaines, entered into an agreement with the First National Bank of Montgomery, by which the said trustee "withdrew from the portion of the estate devised to the said A. Guy Gaines, for the education of said Estelle Gaines, the sum of $2,000.00, as represented by the promissory note of William F. Thetford, Jr., for the sum of two thousand dollars," and this amount, represented by the notes and mortgage of said Thetford, was placed with the First National Bank of Montgomery for the purposes set forth in the agreement, which appears in the report of the case.

The bill charges that the will of said William L. Gaines conferred upon the said Estelle Peters, now Estelle Dahlin, discretionary powers relative to the property devised to her in trust, "which said powers rested in a personal trust and confidence which were reposed by the testator in said Estelle Peters." That the powers conferred by said will could not be lawfully delegated to any one; that the said agreement was therefore void, in that it undertook to delegate to the First National Bank of Montgomery powers which the will conferred upon said Estelle Peters.

The respondent Estelle Dahlin answered the bill, and admitted all its allegations, and, in addition, she averred that she executed the agreement with the said bank "without proper consideration or advice"; that she has "since been advised by counsel, and believes, and, therefore, states that for the reasons given in said bill, she had no authority to delegate any of the powers which were conferred upon her as trustee by the will of said William L. Gaines, deceased."

The said respondent made her answer a cross-bill, making the said Estelle Gaines, the complainant in the original bill, and the said A. Guy Gaines and the First National Bank of Montgomery parties defendant thereto. She prayed that the court make and enter a decree requiring the said First National Bank of Montgomery to account to her as trustee under the will of said William L. Gaines, deceased, for all money, or its equivalent, collected by said bank under the agreement she made with it, and to deliver to her the custody of the funds.

To both bill and cross-bill the respondent the First National Bank of Montgomery demurred, and these demurrers were sustained. The demurrant, among other grounds, assigned the ground that both bill and cross-bill were without equity.

It must be understood that no bad faith, or any intentional wrong, is imputed by the bill to either the respondent bank, or to Mrs. Dahlin, nor are we impressed with any such idea.

If the agreement by which Mrs. Dahlin undertook to transfer a certain portion of the trust property to the bank for the latter's management must fall, such result must follow solely because of the lack of power in the trustee, under the will of the late William L. Gaines, to transfer, or to pass on to another, the discretionary powers vested by the will in Mrs. Dahlin.

That the will-created powers reposed in Mrs. Dahlin a personal trust and confidence, there is no room to doubt. These powers, resting solely upon the trust and confidence of the testator in Mrs. Dahlin, required the exercise of her own judgment and discretion in the management of the trust

property, and could only be discharged by her personally.

In all essential matters connected with, or growing out of, the trust and its execution, the powers conferred by the will upon Mrs. Dahlin were nondelegable. Cramton v. Rutledge et al., 157 Ala. 141, 47 So. 214.

The trustee could not relinquish or transfer this power, or its execution, to the respondent bank. The will called for, and exacted of the trustee, the exercise of her discretion, not that of a substituted trustee. Tilley v. Letcher, 203 Ala. 277, 82 So. 527.

Taking the averments of the bill as true, Mrs. Dahlin has abandoned the trust, in so far as it provides for the education of the complainant, and in so far as the management and preservation of the fund to supply the cost of that education is concerned. By her agreement with the bank, she has attempted to substitute the latter in her stead, thereby withdrawing her judgment and discretion in all matters relating to the trust property, and its management, and in lieu thereof has attempted to substitute the judgment and discretion of the bank. Certainly, there is nothing in the will which authorizes or justifies such a substitution, no matter how beneficial the change might be.

That the cestui que trust, Estelle Gaines, has a direct and immediate interest in the due execution of the trust created by the will, and in the preservation of the original trust status, seems obvious.

■ Courts of equity will never favor a construction that confers upon a trustee absolute or unbridled powers. Haydel v. Hurck, 5 Mo. App. 274; McDonald v. McDonald, 92 Ala. 537, 9 So. 195.

■ The complainant, beneficiary under the trust clause of her grandfather's will, has such an interest in the trust property, and in seeing that the terms of the trust are faithfully carried out, as entitles her to the protection of a court of equity, upon proper showing. The fact that the will-appointed trustee has abandoned the trust, turned it over to another of her own choosing, with all the power originally conferred upon her, presents such a situation as justifies interference by a court of equity on petition or bill of the beneficiary.

By her agreement with appellee bank, the trustee has not only attempted to transfer her discretionary powers over the trust fund to the bank, but she has undertaken to strip herself of the possession and control over the fund for a period of at least ten years,

if not for all time. No matter what exigencies may occur in the meantime, no matter how pressing and important it may become for the trustee to supply funds for the education of the minor within the ten-year period, by her agreement with the respondent bank, she would be powerless to furnish a penny from the fund for that purpose. Can a court of equity, when its plenary powers over trust funds, and of the trustee, are invoked to interfere in such a situation, refuse to lend its aid to the beneficiary of the trust and to annul the contract now before the court? We think not. The equity of the situation requires the trustee, though vested with discretionary powers, to keep herself, and the trust fund, in such position that she can at any time respond to the necessities and requirements of the situation. Though vested with a discretion as to what amount she shall expend, from time to time, for the education of the beneficiary, yet the provision of the will for the education of the minor is plain, unambiguous, and mandatory.

The language of the instrument on the subject is, "*but she* (trustee) *shall reserve a sufficient amount out* of said trust fund, as in her judgment will be proper to educate Estelle Gaines" (the complainant).

Read and construed according to the plain import of the language employed in the contract now under attack, this agreement between the trustee, Mrs. Dahlin, and the bank, attempted to substitute the bank as trustee of the property set aside for the education of complainant, with many discretionary powers in the management of the property conferred upon the substituted trustee.

No provision was made in the will of William L. Gaines for the appointment of a successor to the trustee therein named. Certainly no power was conferred upon Mrs. Dahlin to name her successor.

This court, in the case of Whitehead v. Whitehead, 142 Ala. 163, 37 So. 929, held that, in such a situation the testamentary trustee could not appoint his successor, and quoted with approval the following statement from Mr. Beach in his work on Trusts and Trustees, section 368: "The power to appoint a successor is not inherent to the office of a trustee. But the trustee of an express trust may be invested with this power by the settler or creator of the trust. When a trust is created by deed or will, the trustees may be empowered to appoint their successors, *but the power must be conferred by the instrument by which the trust was created. A trustee can delegate his power only as he is*

*authorized to do it in the instrument creating the trust."* (Italics supplied.)

It appears from the agreement that, after delivering over the trust property to the bank, Mrs. Dahlin entirely abandoned all duties of the office of trustee, and relinquished all supervision and control over the trust property. This she could not do.

We are, of course, not unmindful of the rule here obtaining, that if the trustee exercises discretionary powers in good faith without fraud or collusion, our courts will not review or control that discretion, nor will a bill be entertained to compel the execution of a mere discretionary trust. Such was our holding in the cases of Hoglan v. Moore, 219 Ala. 497, 503, 122 So. 824, and Coker v. Coker, 208 Ala. 354, 356, 94 So. 566.

In this case, however, the trustee has in effect abandoned the trust which conferred discretionary powers, and, in so doing, has attempted to appoint another in her stead, clothed with much the same powers.

Our conclusion is the bill of complaint contains equity, and was not subject to any ground of demurrer directed thereto.

However, we do not mean to hold that, if upon the hearing the averments of the bill are sustained, the trust funds should be redelivered to the respondent, Mrs. Dahlin; for, if the averments are true, Mrs. Dahlin has abandoned the trust, and relinquished all power over the trust estate, which act, in legal effect, was a resignation of the office of trustee.

As courts of equity will not permit a trust to fail for want of a trustee, it would become the duty of the court to administer the trust created by the will of Mr. Gaines, and, to that end, should appoint a trustee to manage the trust fund, requiring of such trustee sufficient bond for the faithful performance of the trust duties, the preservation of the trust funds and due accounting. McDonald v. McDonald, 92 Ala. 537, 9 So. 195.

We are of the opinion, also, that the demurrer to the cross-bill of Mrs. Dahlin was properly sustained, as it appears therefrom that the cross-complainant had abandoned the trust, and it will become the duty of the court to administer the same, by officers of its own appointment, with proper bond.

It results, therefore, that the decree of the circuit court sustaining the demurrer to the original bill will be reversed, and a decree will be here rendered overruling the demur-

rer thereto; and the decree on the demurrer to the cross-bill will be affirmed.

Reversed, rendered, and remanded on direct appeal, and affirmed on cross-appeal.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.